**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 22-20014-CR-GAYLES/TORRES

UNITED STATES OF AMERICA

    *Plaintiff,*

v.

YESID DEGOBERTO EPIEYU EPIEYU,
JUAN ESCOBOSA DIAZ, and
MANUEL MELO,

    *Defendants.*

_____/

**REPORT AND RECOMMENDATION**
**ON DEFENDANTS' MOTION TO DISMISS INDICTMENT**

This matter is before the Court on Manuel Melo's corrected motion to dismiss the Indictment. [D.E. 23]. Defendants Ivan Escobosa Diaz and Yesid Degoberto Epieyu Epieyu ("Mr. Epieyu") also adopted the motion. [D.E. 27]; [D.E. 32]. Mr. Epieyu filed another motion to dismiss the Indictment, which was also adopted by the other two defendants. [D.E. 31]. The United States of America (the "Government") filed a Response in Opposition on June 2, 2022, addressing both motions to dismiss. [D.E. 38]. Defendants replied jointly on June 8, 2022. [D.E. 39]. Therefore, the motions are now ripe for disposition. After careful consideration of the motions, the record, the relevant authorities, and for the reasons discussed below, Defendants' motions should be **DENIED**.

## *I.   BACKGROUND*

On December 22, 2021, a U.S. Maritime Patrol Aircraft ("MPA") located a northbound go-fast vessel ("GFV") approximately 142 nautical miles north of Aruba in international waters, displaying no indication of nationality, and upon the high seas. [D.E. 1]. The MPA crew observed signs of suspected drug smuggling activity related to the GFV: the GFV had two outboard engines, visible packages, and fuel barrels on board, along with a crew consisting of the three Defendants. *Id.* A Dutch Naval vessel named the HNLMS Holland (the "Holland") was in the area at the time with U.S. Law Enforcement Detachment Team 109 ("LEDET") on board. The Holland was diverted to investigate. *Id.* Then, the MPA crew overhead witnessed packages being thrown jettisoned off the GFV, which was a further indication that the vessel was being used for drug trafficking. *Id.*

Once in the vicinity of the GFV, the Holland launched its small boat containing a boarding team and its helicopter. *Id.* The boarding team aboard the small boat recovered thirty-five packages from the water while the helicopter pursued the GFV. *Id.* The helicopter then dispersed several warning shots, which were ineffective, followed by disabling fire of the engines. That use of force proved to be effective and the vessel came to a stop. *Id.* The boarding team on the small boat then boarded and took control of the GFV. *Id.*

Once on board the GFV, the boarding team asked the three Defendants questions to identify the master of the vessel and the vessel's nationality. Defendant Epieyu responded and came forward as the vessel's master. In response to further

questioning he made a verbal claim of Colombian nationality for himself. Yet, according to the credible testimony of the officers that testified at the hearing, Epieyu made no claim of nationality for the GFV. *Id.* The question was put to him directly but he never responded affirmatively.

Accordingly, the vessel was treated as a stateless vessel subject to the jurisdiction of the United States under 46 U.S.C. § 70502(d)(1)(B) of the Maritime Drug Law Enforcement Act ("MDLEA") and a full law enforcement boarding took place. *Id.* The thirty-five packages that the boarding team had recovered from the water amounted to a total at sea weight of approximately 1,486 kilograms of what tested positive for cocaine. *Id.* All three Defendants were then transferred to the Holland. *Id.* Defendants were then transported via four other United States Coast Guard ("USCG") vessels to the Southern District of Florida. They arrived at Port Everglades on January 4, 2022, and were presented before a Magistrate Judge in Miami on January 5, 2022.

The Defendants were later charged by indictment in the Southern District of Florida. [D.E. 10]. Defendants now move to dismiss the Indictment.

## II. APPLICABLE PRINCIPLES AND LAW

A motion to dismiss an indictment is governed by Federal Rule of Criminal Procedure 12(b), which allows a defendant to challenge an indictment on various grounds, including failure to state an offense, lack of jurisdiction, or constitutional reasons. *See United States v. Kaley*, 677 F.3d 1316, 1325 (11th Cir. 2012). Moreover, a "motion that the court lacks jurisdiction may be made at any time while the case is

pending," including after guilty pleas have been entered. *See* Fed. R. Crim. P. 12(b)(2); *see also Class v. United States*, 138 S.Ct. 798, 803–04 (2018) ("[A] plea of guilty to a charge does not waive a claim that—judged on its face—the charge is one which the State may not constitutionally prosecute.") (quoting *Menna v. New York*, 423 U.S. 61, 63 & n.2 (1975)).

An indictment "may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987). Further, "[t]he sufficiency of a criminal indictment is determined from its face." *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992). The indictment's allegations are assumed to be true and are viewed in the light most favorable to the government. *See Torkington*, 812 F.2d at 1354.

### III.   ANALYSIS

Defendants' first argument is that it was not the United States but, rather, the Netherlands that was conducting a law enforcement operation patrolling the high seas where the GFV was stopped. So, Defendants should have been prosecuted in the Netherlands after being detained. Next, Defendants argue that the jurisdictional statute, 46 U.S.C. § 70502(d)(1)(C), is facially unconstitutional because it goes beyond the limits of customary international law embodied in the Felonies Clause of the Constitution. Defendants also argue that the MDLEA is unconstitutional as applied to them because they were apprehended within the Exclusive Economic Zone ("EEZ") of the Netherlands. Defendants argue that the MDLEA was unconstitutional as

applied to them also because this case bears no nexus to the United States. Finally, Defendants argue that there was an unreasonable delay between their detention and their presentment before a Magistrate Judge, which violated their Constitutional rights. The Court finds all these arguments unpersuasive.

Defendants' motions were adjudicated through an evidentiary hearing where the Government presented four witnesses, three USCG officers and the DEA case agent. The officers confirmed that it was a team of U.S. law enforcement officers that led the interdiction on December 22, 2021, even though they were aboard a Dutch asset, and that the United States has many bilateral treaties with other countries that enable the United States to conduct interdictions in this way. This testimony undermines Defendants' argument that because this was a "Dutch-led" interdiction, they should have been prosecuted in the Netherlands.

The officers also verified why the manner and means by which the vessel was seized, including specifically the types of questions that were put to the Master of the vessel, in Spanish, as well as his responses. The two officers present at the initial seizure of the vessel both credibly recalled that Defendant Epieyu did not assert any nationality for the vessel. No contradictory testimony was presented by any of the Defendants. Based on this record, we address the Defendants' arguments in turn.

### A. *The MDLEA and its Definition of Stateless Vessel.*

The Constitution grants Congress the power "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." U.S. Const. art. I, § 8, cl. 10. "As interpreted by the Supreme Court, this clause contains three distinct grants of power: (1) the power to define and punish piracies (the Piracies Clause); (2) the power to define and punish felonies committed on the high seas (the Felonies Clause); and (3) the power to define and punish offenses against the law of nations, (the Offences Clause)." *See United States v. Macias*, 654 F. App'x 458, 460 (11th Cir. 2016) (quotation marks and citation omitted).

According to this authority, and in recognition of the fact that "trafficking in controlled substances abord vessels is a serious international problem, . . . [that] presents a specific threat to the security and societal well-being of the United States[,]" Congress enacted the MDLEA in 1986. *See* 46 U.S.C. § 70501. MDLEA makes it a federal crime for a person "on board a covered vessel . . . [to] knowingly or intentionally manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance." *See* 46 U.S.C. § 70503(a); *see also United States v. Estupinan*, 453 F.3d 1336, 1338 (11th Cir. 2006). A "covered vessel" is one that, among other things, is "subject to the jurisdiction of the United States." *See* 46 U.S.C. § 70503(e)(1). In turn, the MDLEA deems a vessel subject to the jurisdiction of the United States if the master of the vessel makes a claim of nationality but the claimed nation of registry "does not affirmatively and unequivocally assert that the vessel is of its nationality." *See* 46 U.S.C. § 70502(d)(1)(C). Additionally, a vessel is subject to

6

the jurisdiction of the United States if the master of the vessel fails, on request of a United States officer, to make a claim of nationality or registry for the vessel. *See* 46 U.S.C. § 70502(d)(1)(B).

### B. *Defendants' Arguments Attacking the Constitutionality of § 70502(d)(1)(C) Are Not Relevant Here.*

Defendants argue that § 70502(d)(1)(C) is unconstitutional on its face because its definition of stateless vessel clashes with customary international law ("CIL"). According to Defendants, the scope of the power granted by the Felonies Clause to Congress is confined to the limits proscribed by CIL and under CIL, a verbal claim of nationality by the master of the vessel constitutes a prima facie showing of nationality. [D.E. 31 at 8-9] ("Congress's authority to define and punish . . . Felonies committed on the high Seas goes only as far as international law permits.") (quotation marks and citation omitted). However, because § 70502(d)(1)(C) allows U.S. officers to treat as stateless vessels that, under international law, would be considered vessels with nationality, this jurisdictional provision of MDLEA transcends CIL, and the scope of power granted by the Felonies Clause. *Id.*

Defendants' argument fails because they focus solely on the constitutionality of § 70502(d)(1)(C) of the MDLEA, rather than § 70502(d)(1)(B), which is the provision that applies in this case. Defendants' argument attacks the constitutionality of § 70502(d)(1)(C), under which the United States acquires jurisdiction over a vessel when the vessel's master makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality. Here, however, the Government seeks to establish jurisdiction of the GFV

7

pursuant to § 70502(d)(1)(B), under which jurisdiction vests when the master of the vessel fails to make a claim of nationality for the vessel altogether. The largely undisputed and otherwise credible record on the motion shows that Mr. Epieyu identified himself as the master of the GFV, but then failed to make any claim of nationality for the vessel. Jurisdiction vested at that point under § 70502(d)(1)(B), not § 70502(d)(1)(C), thereby making Defendants' argument irrelevant given this record.

Defendants did not rebut the government's showing directly. But they point out that there was a subsequent report filed by a Drug Enforcement Administration ("DEA") agent, which stated that Mr. Epieyu did make a claim of Colombian nationality for the GFV, that the boarding team contacted Colombia to verify the claim, and that Colombia neither affirmed nor denied the GFV's nationality. If true, jurisdiction would then have been possible under § 70502(d)(1)(C), making Defendants' facial unconstitutionality argument relevant. But the report by the DEA agent may have been based on a one-paragraph summary of the subject interdiction sent in an email to the DEA from the USCG. The Court's in camera review of that email does not reveal any impeachment or *Brady* evidence with which to support Defendants' position.

What we have instead is credible testimony of the officers with the most knowledge of the encounter, juxtaposed against a contradictory report from an agent who was nowhere near the interdiction. We also have the credible testimony from the case agent who testified that the report may have been the product of an internal

error within the DEA, possibly based upon transposition of facts from cases arising at the same time. Taking that impeachment at face value for what it is worth, the Court finds that the totality of circumstances in the record, based principally on the two Coast Guard officers who had personal knowledge of what the Master said on the vessel, establish that Defendant Epieyu did not assert a claim of Colombian nationality for the vessel. That finding requires us to apply § 70502(d)(1)(B).

Accordingly, and because the weight of the evidence in the record supports the finding that Mr. Epieyu never made a claim of nationality for the GFV, this Court finds that jurisdiction was established under § 70502(d)(1)(B). The constitutional challenge has no merit in this case.

### C. *MDLEA Is Not Unconstitutional as Applied to Defendants Apprehended Within an Exclusive Economic Zone.*

Alternatively, Defendants argue that the MDLEA is unconstitutional as applied to them because they were apprehended within the EEZ of the Netherlands, and according to Defendants, EEZs constitute territorial waters and not the high seas. But as the Government points out, this argument fails because precedent from the Eleventh Circuit and several district courts hold that an EEZ does not fall within the territorial waters of a nation.

The Eleventh Circuit has defined the high seas to constitute "all waters which are neither territorial seas nor internal waters of the United States or of any foreign country." *See United States v. McPhee*, 336 F.3d 1269, 1273 (11th Cir. 2003) (quoting 33 C.F.R. § 2.05-1). A vessel outside the recognized twelve-mile limit of a nation's territorial seas is a "vessel located within international waters" subject to the U.S.'s

9

jurisdiction under the MDLEA. *Id.* at 1247 (holding that a vessel intercepted seventeen miles of the Bahamans was "unambiguously in international waters at the time of its interception."). Here, it is undisputed that Defendants were intercepted approximately 142 miles north of Aruba. Applying this precedent, it is clear that they were captured on the high seas.

Furthermore, several courts, including some in this district, have held that a nation's EEZ remains part of the high seas and does not fall within the territorial waters of that nation. *See United States v. Alfonso*, No. 21-20306-CR, ECF No. 47 at 5-6 & n.2 (S.D. Fla. Nov. 22, 2021) (Altonaga, C.J.) (holding that the defendants were on the high seas when interdicted in the Dominican Republic's exclusive economic zone and collecting cases holding that territorial waters only extend to twelve nautical miles off the coast); *Dilbert v. United States*, No. 8:13-CV-2189-T-30MAP, 2013 WL 5408444, at *3 (M.D. Fla. Sept. 25, 2013) (holding that the petitioner "misinterpret[ed]" the United Nations Convention on the Law of the Sea and applying the "12-nautical-mile definition of territorial waters" as required by *McPhee*); *see also United States v. Beyle*, 782 F.3d 159, 167 (4th Cir. 2015) (holding that the exclusive economic zone is "merely a part of the high seas where that nation has special economic rights and jurisdiction.").

Defendants also argue that the MDLEA is unconstitutional as applied here because Congress's power under the Felonies Clause is limited to offenses bearing a nexus to the United States, and there was no nexus to the United States here because the Defendants were in the EEZ of another country. This argument also fails as it is

10

foreclosed by binding Eleventh Circuit precedent. *See United States v. Ruiz-Murillo*, 736 F. App'x 812, 817 (11th Cir. 2018) (holding that the conduct proscribed by the MDLEA does not require a nexus to the United States because universal and protective principles support its extraterritorial reach). Accordingly, we find that jurisdiction was properly exercised under § 70502(d)(1)(B) because Defendants were interdicted on the high seas.

### D. *The Government Did Not Violate Federal Rules of Criminal Procedure 5(a) and (b).*

Finally, Defendants seek to dismiss the Indictment on the grounds that the Government violated Rules 5(a) and (b) of the Federal Rules of Criminal Procedure due to its failure to promptly bring Defendants before a U.S. Magistrate Judge and secure a criminal complaint, costing Defendants their rights to due process.

Rule 5(a)(1)(B) of the Federal Rules of Criminal Procedure provides in pertinent part, "[a] person making an arrest outside the United States must take the defendant without unnecessary delay before a Magistrate Judge, unless a statute provides otherwise." Fed. R. Crim. P. 5(a)(1)(B). Factors relevant to the consideration of whether a delay was unreasonable include: (1) the distance from the point of seizure to the United States port, (2) any reason for the delay, (3) evidence of mistreatment or improper interrogation during the delay, and (4) the time between arrival in port and presentment to the magistrate. *See United States v. Purvis*, 768 F.2d 1237, 1239 (11th Cir. 1985).

Defendants were detained on December 22, 2022, arrived in the Southern District of Florida on January 4, 2022, and were brought in front of a Magistrate

11

Judge on January 5, 2022. There was a two-week delay between Defendants detention and their presentment. As to the first *Purvis* factor, the distance between the detention location and Miami, Florida, was quite lengthy, seeing as the detention occurred 142 nautical miles north of Aruba. Defendants estimated that the trip would have taken about three days if the cutter that detained them would have traveled directly to Miami. [D.E. 31]. As to the second *Purvis* factor, for reasons of efficiency, USCG vessels cannot derail their individual missions to bring detainees to shore every time they detain individuals, and they are required to await a disposition from their superiors detailing which district the detainees will be prosecuted in before transporting them anywhere. *See Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979) (recognizing that while "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law," the government "may detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution.")

In considering the third factor, this Court finds no evidence that suggests the detainees were mistreated or interrogated during their transportation to the Southern District of Florida. Additionally, the two-week delay was not unreasonable. *See United States v. Cabezas-Montano*, 949 F.3d 567, 593 (11th Cir. 2020) (holding that there was no clear error in the district court's ruling that a forty-nine-day delay was reasonable for defendants arrested on the high seas more than two hundred miles off the coast of Guatemala/El Salvador); *Purvis*, 768 F.2d at 1239 (holding that

a five-day delay was reasonable for defendants arrested on the high seas approximately 350 miles from Key West); *United States v. Castillo*, 899 F.3d 1208, 1217-18 (11th Cir. 2018) (Martin, J., concurring) (discussing Rule5(a)(1)(B) and determining that a nineteen-day delay was reasonable for a defendant arrested off of the Pacific coast of Guatemala). Finally, Defendants were presented to a Magistrate Judge the day after arriving in port. Accordingly, this Court finds that the delay here was reasonable and satisfied all essential prerequisites for due process for each of the Defendants.

Regardless, even if the delay was found to be unreasonable, the appropriate remedy would be suppression of any evidence that had been gained during such unreasonable delay, not dismissal of the Indictment. *United States v. Carruthers*, 458 F. App'x 811, 813 (11th Cir. 2012) ("The only remedy recognized for a violation of Rule 5 was the suppression of evidence obtained as a result of the violation."); *United States v. Marin*, No. 8:19-cr-488-T-36JSS, 2020 U.S. Dist. LEXIS 208910, at *37 (M.D. Fla. Apr. 24, 2020) (holding that the defendants failed to establish unnecessary delay under Rule 5(a) but that, even if they had, "the remedy for a Rule 5(a) violation is suppression of evidence obtained during the delay, not dismissal."). Because the Defendants were not interrogated during their voyage to the District, there is no incriminating evidence for the Court to suppress due to this alleged violation. And clearly dismissal is not warranted as an alternative remedy under these circumstances.

Defendants also argue that the Government violated Rule 5(b), which provides, "If a defendant is arrested without a warrant, a complaint meeting Rule 4(a)'s requirement of probable cause must be promptly filed in the district where the offense was allegedly committed." Fed. R. Crim. P. 5(b). Defendants' argument, stemming from the Fourth Amendment's protection against unreasonable seizures, is that because they were held for thirteen days with no charges filed against them, their rights under Rule 5(b) were violated. This argument is foreclosed by Eleventh Circuit precedent. *See Cabezas-Montano*, 949 F.3d at 593 (holding that "the Fourth Amendment does not apply to searches and seizures (arrests) by the United States of a non-citizen/non-resident alien arrested in international waters or in a foreign country."). Because Defendants are neither citizens nor resident aliens of the United States, Defendants' Rule 5(b) arguments fail.

Accordingly, Defendants arguments are unpersuasive and their motions to dismiss the Indictment should be DENIED.

### IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendants' motions to dismiss the Government's indictment [D.E. 23] and [D.E. 31] should be **DENIED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have nine (9) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. The Court finds good cause to expedite the objection period to accommodate the current trial schedule. Failure to

14

timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

      **DONE AND SUBMITTED** in Chambers at Miami, Florida, this 5th day of July, 2022.

                                                  /s/ *Edwin G. Torres*
                                                  EDWIN G. TORRES
                                                  United States Magistrate Judge